UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**TAMMY A MCGUIRE,**

    **Plaintiff,**

v.                                                        Case No:   6:19-cv-568-Orl-EJK

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**
_____/

**ORDER**[1]

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Supplemental Security Income benefits ("SSI"). The Court has reviewed the record, including the decision of the administrative law judge ("ALJ"), the administrative record, and the memorandum of the parties. After due consideration, the Commissioner's final decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g).

**I.    BACKGROUND**

On October 28, 2015, Plaintiff filed her application for SSI, alleging disability due to bulging discs in her neck, left wrist pain, spinal disorder, chronic pain syndrome, left shoulder pain, and the mass on the back of her neck. (Tr. 204, 206.) The Commissioner denied Plaintiff's claims initially and on reconsideration. (Tr. 104–111.) After an administrative hearing (Tr. 33–77), the ALJ issued a decision finding Plaintiff not disabled (Tr. 14–32). The Appeals Council did

---

[1] On May 31, 2019, both parties consented to the exercise of jurisdiction by a United States magistrate judge (Doc. 14.) The case was referred by an Order of Reference for all further proceedings on June 3, 2019. (Doc. 16.)

not find that Plaintiff's reasons for disagreeing with the ALJ's decision provided a basis for changing the ALJ's decision. (Tr. 1.) Plaintiff now appeals, seeking judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II. THE ALJ'S DECISION

An individual is considered disabled and entitled to disability benefits if the person is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In evaluating a disability claim, the Commissioner must use the following five-step sequential analysis:

1. If the applicant is working, the claim is denied.
2. If the impairment is determined not to be severe—i.e., if the impairment or combination of impairments does not significantly limit the individual's physical or mental ability to do basic work—then the claim is denied.
3. If the impairment or combination of impairments meets or medically equals one of the specific impairments listed in the regulations, then the claimant is entitled to disability benefits. If not, then the Commissioner proceeds to step four.
4. If the claimant has the residual functional capacity ("RFC") to perform past work, then the claim is denied.
5. If the claimant cannot perform past work, then the Commissioner must determine whether there is substantial work in the economy that the claimant can perform. If so, the claim is denied.

*See* 20 C.F.R. §§ 416.920–416.976.

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of October 28, 2015. (Tr. 19.) At step two, the ALJ found that Plaintiff was severely impaired by a combination of carpal tunnel syndrome and degenerative disc disease of cervical spine. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations. (Tr. 20.) Before proceeding to step four, the ALJ determined that Plaintiff had the RFC to do the following: "perform light work . . . except frequently climbing ramps or stairs; never climbing ladders, ropes or scaffolds; frequently balancing; occasionally stopping, kneeling and crouching; never crawling; frequently reaching; [and] occasionally handling and fingering with the right upper extremity." (Tr. 21.) At step four, the ALJ determined that Plaintiff did not have past relevant work. (Tr. 25.) At step five, the ALJ concluded that considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.*) Such jobs included furniture rental clerk, counter clerk, and usher. (Tr. 25–26.)

### III. SCOPE OF JUDICIAL REVIEW

On judicial review, a Court may determine only whether the ALJ correctly applied the legal standards and if the ALJ's findings are supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir.1997)). A Court may "not reweigh the evidence or substitute [its] own judgment for that of the agency." *Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 683 (11th Cir. 2019) (citing *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

The Eleventh Circuit defines "substantial evidence" as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Raymond v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 766, 774 (11th Cir. 2019) (citing *Lewis*, 125 F.3d at 1439). A Court determines whether substantial evidence exists by considering evidence that is both favorable and unfavorable to the Commissioner's decision. *Lynch v. Astrue*, 358 F. App'x 83, 86 (11th Cir. 2009). "Even if the evidence preponderates against the [Commissioner's] findings, [the Court] must affirm if the [Commissioner's] decision is supported by substantial evidence. *Gibbs v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 799, 800 (11th Cir. 2017) (citing *Crawford*, 363 F.3d at 1158–59 (11th Cir. 2004)).

## IV. DISCUSSION

Plaintiff's sole contention[2] on appeal is that the ALJ erred by assigning little weight to the medical opinion of Plaintiff's treating physician, Gary M. Weiss, M.D. (Doc. 25 at 17.) Specifically, Plaintiff argues that there is not substantial evidence to support the ALJ's determination that Dr. Weiss's opinion is inconsistent with his own treatment notes. (Doc. 25 at 20.) Moreover, according to Plaintiff, the ALJ erred by improperly citing to Plaintiff's ability to do activities of daily life and by affording more weight to a non-examining physician's opinion in order to discredit Dr. Weiss's opinion. (*Id.* at 20, 30.) In the response to the Commissioner's contentions, Plaintiff contends that the ALJ erred by misstating the Dr. Weiss's treatment records. (*Id.* at 33.) Upon review of the record, the Court finds that the ALJ's decision is not supported by substantial evidence due to the presence of multiple errors in the decision.

---

[2] *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (*per curiam*) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court.")

Plaintiff first visited Dr. Weiss for her wrist and neck pain on May 20, 2016. (Tr. 490.) At the appointment, Plaintiff reported that a constant burning pain radiated down from her right wrist to the center of her hand and that she had experienced decreased grip and general weakness. (*Id.*) She also indicated that she had shoulder pain that radiated up to her neck. (*Id.*) At the appointment, Dr. Weiss conducted a neurological evaluation and found the following:

> Patient is alert and oriented x3. There is no evidence of a mood or thought disorder. Memory and other cortical functions are grossly intact. [] Gait and station are normal including tandem, toe and heel walking. Romberg sign is negative. There is no drift of outstretched arms with the eyes closed. [] Pupils are equally round and reactive to light ans [*sic*] accommodation. Fundi are benign. Extraocular eye movements are intact without nystagmus. Visual fields are full to confrontation. Facial strength and sensation including corneal reflex is normal bilaterally. Hearing is within normal limits for age bilaterally. The Weber is midline. The lower cranial nerve including gag reflex, tongue protrusion, and 11th cranial nerve function are within normal limits. [] Strength is normal and symmetric in all four extremities except -1 right radial innervated muscles and right APB. There is no evidence of atrophy or fasciculations. [] Reflexes are normal and symmetric in the upper and lower extremities. There are no pathological reflexes. [] Sensation is intact to pin, touch, vibratory, position sense and parietal testing in the four extremities except 0, -1 right distal radial distribution and ulnar distribution in the hand. Tenderness dorsum of right hand. [] Cerebellar testing is within normal limits including AMR's, finger-finger-nose and heel-knee-shin testing bilaterally. No dysmetria or tremor is notes [*sic*]. [] Cerebrovascular exam is normal with absence of cervical bruits. Cervical spine motions are reduced -2 with extension, -2 with right lateral movement, -2 with left lateral movement, and -2 with flexion. There are psp spasms +2/+2 and tenderness +2/+2. Foranimal compression was deferred.

(Tr. 492.) Dr. Weiss concluded that Plaintiff suffered from right arm pain, neck pain with a limited range of neck motion, and severe pain in her right wrist due to ganglion cysts , among other things. (Tr. 493.)

On April 13, 2017, Plaintiff saw Monica Wise, ARNP[3], at Dr. Weiss's office. (Tr. 596.) At the appointment, Plaintiff reported that she had undergone surgery on her right wrist and her pain had improved. (*Id.*) Plaintiff also reported having headaches due to her neck pain, but medication relieved her neck pain. (*Id.*) Plaintiff denied having low-back or mid-back pain but she did have tailbone pain. (Tr. 596–97.) Nurse Wise reported that Plaintiff had decreased grip strength but no longer needed to wear a splint for her right wrist. (Tr. 596.)

Plaintiff saw Nurse Wise[4] again on June 8, 2017 and March 13, 2018. (Tr. 586, 723.) Plaintiff did not report any symptoms that were different from her April 13, 2017 appointment, nor did Nurse Wise make any additional findings. (Tr. 586–590, 723–726.)

Dr. Weiss conducted a physical restrictions evaluation on March 27, 2018[5] (the "Opinion"). (Tr. 739–42.) Dr. Weiss opined that Plaintiff had the following restrictions based on the cervical pain from her reflex sympathetic dystrophy: she can sit for 15–30 minutes without interruption; she can stand or walk for 5–10 minutes; and in an 8-hour work day, she should sit and stand for 1–2 hours and recline or lie down 4 hours a day. (Tr. 638.) Dr. Weiss also indicated that Plaintiff should elevate her legs above her heart every 1–2 hours during an 8-hour period due

---

[3] "ARNP" stands for "advanced registered nurse practitioner." In Florida, an ARNP may, but is not limited to, doing the following: "prescribe, dispense, administer, or order any drug;" "initiate appropriate therapies for certain conditions;" and "order diagnostic tests and physical and occupational therapy." Fla. Stat. § 464.012(b)(3)–(4).

[4] The ALJ erroneously stated that Plaintiff saw Dr. Weiss on June 8, 2017 and March 13, 2018 in the decision. (Tr. 23–24.)

[5] While the Commissioner and the ALJ posit that there were two physical restrictions examinations, one on October 16, 2017 and the second in March 27, 2018 (Doc. 25 at 28; Tr. 24.), the record supports a contrary finding. A comparison between the March 2018 and October 2017 physical restriction examinations reveal that they are identical, including the same typographical errors. (*Compare* Tr. 638–640 *with* Tr. 739–42.) Additionally, the treatment notes from Dr. Weiss's office indicate that Plaintiff saw Nurse Wise for a follow up exam on October 16, 2017. (Tr. 620–23; Doc. 25 at 13.) Finally, Plaintiff refers to only one physical restrictions exam in her portion of the Joint Memorandum. (*See* Doc. 25 at 17–26.) In light of the foregoing, the Court does not find that Dr. Weiss conducted two physical restrictions evaluations.

to her RSD and cervical pain. (*Id.*) Dr. Weiss opined that Plaintiff's condition would produce good days and bad days, but did not explain how this would impact her physical restrictions. (Tr. 638–39.) Dr. Weiss said that Plaintiff could never climb, stoop, crouch, kneel, or crawl, but could occasionally balance; however, he did not detail the medical findings that supported his assessment. (*Id.*) Dr. Weiss also stated that Plaintiff's ability to reach above her head, conduct fine finger manipulation, and push/pull with her hands were affected by an unspecified impairment. (*Id.*) Dr. Weiss reported that Plaintiff is unable to use her feet to operate foot controls or repeatedly use her hands on a sustained basis over an 8-hour period. (Tr. 640.)

In determining Plaintiff's RFC, the ALJ found that at the June 8, 2017 appointment, the provider at Dr. Weiss's office noted that Plaintiff was alert and oriented "times three"; had normal gait, station, tandem walking, and heal to toe walking; cortical functions were grossly intact, and there was no evidence of mood or thought disorder. (Tr. 23.) At the March 13, 2018 appointment, the provider at Dr. Weiss's office noted, in addition to the findings from the June 8, 2017 appointment:

> [Plaintiff's] Romberg sign was negative; there was no drift or outstretched arms with the eyes closed; her strength was normal and symmetric in all four extremities except right radial innervated muscles and right APB; her reflexes were normal and symmetric in the upper and lower extremities; her sensation was intact to pin, touch, vibratory, position sense and parietal testing in the four extremities except right distal radial distribution and ulnar distribution in the hand; [Plaintiff also had] [t]enderness in the right hand.

(Tr. 24.) These comments appeared in the "Initial Neurologic Examination" section in the treatment notes. (*See* Tr. 588–89; 725.) The ALJ ultimately assigned little weight to Dr. Weiss's opinion, stating that it was "not consistent with the treating notes provided by his office," namely the findings from the "Initial Neurologic Examination." (Tr. 24.)

The primary issue at this juncture is that the ALJ committed several errors in his analysis of the medical records from Dr. Weiss's office. Most importantly, the ALJ erroneously indicated that the provider at Dr. Weiss's office conducted a neurological exam at the June 8, 2017 and March 13, 2018 appointments, when the only neurological exam was conducted at Plaintiff's initial appointment with Dr. Weiss on May 20, 2016. (Tr. 24.) After a comparison of the language from the May 2016 "Initial Neurologic Examination" to the "Initial Neurologic Examination" portion in subsequent treatment notes, the Court concludes that the only neurological exam occurred at the May 20, 2016 appointment. Not only is the language identical [6] in each "Initial Neurologic Examination" section in subsequent treatment notes, but they also contain the same typographical errors. [7] This indicates that the providers, Nurse Wise and Dr. Weiss, were not conducting a neurological exam at every appointment; instead the findings from the neurological exam at the initial appointment was transfixed to all the treatment notes—hence the title "*Initial* Neurologic Examination." Furthermore, it is unlikely that two different providers made the same typographical error on twenty-two different occasions.

"Where the 'ALJ misread the record evidence' to include an inconsistency that did not exist in the facts, to the extent that the ALJ relied on a non-existent inconsistency in discrediting the opinion, 'the ALJ's decision to give [the] opinion no weight is not supported by substantial record evidence.'" *Lee v. Colvin*, No. 2:12-CV-2935-KOB, 2014 WL 1338173, at *2 (N.D. Ala.

---

[6] Starting in March 2017, the treatment notes would occasionally contain the language "right ring finger unable to bend." (*See*, *e.g.* Tr. 603.) This language has a *de minimis* impact on the Court's conclusion that a sole neurologic exam occurred because the ring finger issue was reported at the initial appointment. (Tr. 490.)

[7] The typographical errors are: "reactive to light ans accommodation" instead of "light and accommodation;" and "[n]o dysmetria or tremor is notes" instead of "is noted." (*See* Tr. 490, 511, 518–19, 523, 526–27, 530–31, 540–41, 545–46, 550–51, 588–89, 593–94, 598–99, 602–03, 606, 611–12, 622–23, 626–27, 631–32, 636–37, 725, 729, 734–35.)

Mar. 31, 2014) (quoting *Davis v. Astrue*, 287 F. App'x 748, 758–59 (11th Cir. 2008)). In such cases, a court should reverse and remand the ALJ's decision since it would not have been supported by substantial evidence. *Davis*, 287 F. App'x at 762.

Here, the ALJ relied on an inconsistency—the repeated unremarkable findings in the neurological exam—that did not exist because there was only one neurological exam. As such, the Court finds that the ALJ's decision is not supported by substantial evidence and this case is due to be reversed and remanded. *See Ellis v. Comm'r of Soc. Sec.*, No. 6:16-CV-1384-ORL-GJK, 2017 WL 1282867, at *4 (M.D. Fla. Apr. 6, 2017) (finding that remand was appropriate where the ALJ provided a material misstatement of the record when providing a reason to discount the opinion of a treating physician.)

Even if the ALJ had not relied on this inconsistency to discount Dr. Weiss's opinion, the multiple errors and mischaracterizations about the record would warrant reversal. In addition to misinterpreting the frequency of the neurological exams, on two occasions, the ALJ stated Plaintiff was seen by Dr. Weiss when it was actually Nurse Wise who saw Plaintiff. (Tr. 23–24, 586, 723.) This error makes it unclear whether the ALJ intended to rely only on Dr. Weiss's treatment notes in deciding what weight to assign his opinion. Second, the ALJ said that Dr. Weiss conducted two physical restrictions exams, when only one was conducted on March 27, 2018. (Tr. 24, 620–23, 739–42.)

While any of these errors individually might not warrant reversal, "the conglomeration of these errors makes it impossible to determine whether substantial evidence supports" the ALJ's reason for discrediting Dr. Weiss's opinion. *Conlon v. Comm'r of Soc. Sec.*, No. 6:17-cv-2012-Orl-DCI, 2019 WL 1003068, at *4 (M.D. Fla. Mar. 1, 2019); *see also Smith v. Astrue*, No. 308-CV-406-J-TEM, 2009 WL 3157639, at *6 (M.D. Fla. Sept. 25, 2009) ("[T]he misstatements taken

as a whole and the lack of reference to other medical evidence indicate the ALJ failed to properly consider all the evidence.")

Since the Court finds reversal is warranted based on the ALJ's misinterpretations, the Court need not consider Plaintiff's other arguments at this time. *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (stating that the claimant's other assignments of error will not be discussed since the court already found grounds for reversal).

## V.     CONCLUSION

If on remand, the ALJ once again assigns little weight to Dr. Weiss, he "must specify . . . any reason for giving it no weight" or otherwise the decision may be reversed again. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). "In the absence of [a statement indicating the weight assigned to a medical opinion and the reasons therefore], it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Adamson v. Comm'r of Soc. Sec.*, No. 6:17-cv-1896-Orl-DNF, 2019 WL 643721, at *6 (M.D. Fla. Feb. 15, 2019) (finding that the ALJ's rejection of a treating physician's opinion on the basis that it was inconsistent with the treatment notes, without explaining the inconsistencies, did not constitute good cause for rejecting the opinion).

The Court also notes that there is dissonance within the joint memorandum. For example, the background facts and Plaintiff's portion of the memorandum indicate that the only physical restrictions examination was conducted on March 27, 2018, while the Commissioner states that there were two. (Doc. 25 at 3–15, 19, 28.) Further, Plaintiff appears to note that the only initial neurologic examination was at the first appointment on May 20, 2016, while the Commissioner's argument indicates that a neurologic examination occurred at every appointment. (*Id.* at 20, 29.)

The Amended Scheduling Order states that "counsel for the parties shall confer in a good faith effort to resolve any disputed issues of procedural history, jurisdiction, standard of review, and **statement of facts**, and revise the proposed Joint Memorandum to the extent they agree that revisions are necessary." (Doc. 22 at 2.) (emphasis added). This type of factual inconsistency should have been resolved prior to submission of the Joint Memorandum.

Accordingly, it is **ORDERED** as follows:

1. The Commissioner's final decision in this case is **REVERSED AND REMANDED** for further proceedings consistent with the findings of this Order.
2. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff and **CLOSE** the file.

**DONE** and **ORDERED** in Orlando, Florida on March 27, 2020.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record